SCHOTT, Judge.
Plaintiff brought suit against his automobile insurance carrier claiming damages arising out of an accident which occurred in February, 1982. He alleged that the car he was driving on the expressway was struck by a motorcycle which caused him to lose control of the car and that the motorcycle continued on its way. Thus, he asserts an uninsured motorist claim based on a “hit- and-run” accident. Defendant contested coverage on the ground that there was no contact between the car and the motorcycle. The case was submitted to the jury on this interrogatory: “Do you find that the plaintiff, Dr. Randolph M. Howes, has proven by a preponderance of the evidence that there was physical contact between his vehicle and the motorcycle?” The jury answered, “no”, and the suit was dismissed. The principal issue is whether the jury’s verdict is manifestly erroneous.
Plaintiff specifies nine errors for this court’s consideration. The first is that the jury erred in overlooking the testimony of plaintiff, an eye witness, and a body shop operator in concluding there was no contact between the vehicles. The next two specifications are with respect to asserted im *993 proper trial tactics which plaintiff contends inflamed the jury against him. The next concerns a ruling by the trial court regarding plaintiffs use of medical terminology in his own testimony. Next, plaintiff contends the trial court erred in denying his motion for a directed verdict on the liability issue. Specification six refers to a ruling on plaintiffs testimony as to what appears in a photograph. Specification seven is a complaint that more than one defense counsel participated in the trial. Specification eight concerns a statement by the trial court which defendant claims was prejudicial to his case. ' Specification nine is with respect to various instructions which defendant requested the trial court give to the jury and which the court failed to give.
Beginning with the last specification, these requested instructions dealt with the purpose of uninsured motorist protection, stacking of policies, and penalties for arbitrary refusal to pay and mishandling of a claim. For the most part the sense of these instructions was incorporated in the judge’s instructions though in different words. However, to the extent they were not given, they have nothing to do with the jury’s finding of no physical contact. Thus, assuming error in the court’s failure to give the requested instructions, it was harmless error at worst since the instructions would not have produced a different result.
In order to deal with the other specifications of error the evidence produced at the trial must first be considered. Plaintiff testified he was proceeding at about fifty miles per hour in the left lane of the expressway in a borrowed Lincoln Continental automobile when a motorcycle entered the expressway from an up-ramp; it “came flying by and hit the right front end of the car”; and he (plaintiff) in an effort to avoid injuring the motorcyclist swerved into an embankment on his left side of the road with the result that his car “bounced back and forth between the two railings until it came to a stop.”
An eyewitness, Hebert, testified he was in his automobile “a couple of hundred feet behind” plaintiff when he saw the motorcycle strike plaintiff’s car. Asked what he observed he answered: “Well, the motorcycle glazing his car causing him to run into the bridge and the motorcycle glazed off and kept on going.” Hebert described plaintiff’s reaction after being struck to be: “Well, he ping-ponged on the interstate— well, the overpass, by hitting the railing. ... He hit the rail one side causing him to bounce off all over the road.” He stopped after the accident and found plaintiff to be injured and in shock. Plaintiff gave him a card and he waited only a few minutes but left before the police came because he “didn’t feel like standing around.” He contacted plaintiff about a week later “to tell [plaintiff] where I was around”, and sometime later plaintiff contacted him to hire him to paint a car.
Finally, a body shop operator, Rearick, testified he was asked by plaintiff to inspect the wrecked Lincoln. He did so and found a black mark on the right front fender which revealed to him that the vehicle had been struck by another vehicle.
By specification five plaintiff contends the trial judge erroneously denied his motion for a directed verdict on liability. Such a motion should be granted only if the facts and inferences are so overwhelming in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict. LSA-C.C.P. Art. 1810; Oppenheim v. Murray Henderson Undertaking, 414 So.2d 868 (La.App. 4th Cir.1982). Plaintiff contends that his evidence was uncontradicted to the effect that there was contact between the vehicles so that reasonable men could not conclude otherwise.
Plaintiff’s burden was to prove that a phantom vehicle, a motorcycle, struck his autmobile. His own testimony was the primary evidence on this point, but the trial judge who saw and heard him on the witness stand, must have had serious doubts about his credibility when he decided to submit the issue of contact to the jury. Bearing on the issue of his credibility were his admissions on cross examination that *994 the police report made no mention of the motorcycle and that he made no mention of the motorcycle in discussions he had with the insurance adjuster who handled the physical damage claim on the automobile. Surely, had plaintiff been the only witness and had there been no other evidence a directed verdict would not have been in order because the jury’s sole function would have been to evaluate the plaintiffs credibility. However, plaintiff argues that plaintiffs testimony was corroborated by that of Hebert and Rearick.
Based upon our review of the record we are not persuaded that the testimony of these witnesses was so convincing that reasonable men would be compelled to conclude that there was contact between plaintiffs car and a phantom motorcycle. Hebert was “a couple hundred” feet behind plaintiff who was traveling at fifty miles per hour when he saw the motorcycle “glaze” off the automobile. In and of itself this is a doubtful description of physical contact between the vehicles and its reliability is further shaken by the fact that this motorcycle going at a “flying” speed in excess of fifty, after making contact with a heavy Lincoln simply continued on its way without any apparent difficulty. Hebert’s credibility was further called into question by his story that he didn’t even remain on the scene until help came despite plaintiff’s being in shock and bleeding and his admission that plaintiff subsequently hired him to paint a car for $900. Rearick’s testimony was likewise questionable and vulnerable to rejection by a reasonable jury. Here was a car which had been badly smashed as it “ping-ponged” and “bounced” back and forth on the rails along the expressway. A late model, it was totally wrecked for insurance purposes. After being told by plaintiff that his car was struck by a motorcycle, Rearick reported finding a black mark on the right fender which he believed resulted from the collision. We cannot treat this as strong and convincing testimony that a collision occurred. Instead, we regard it as after the fact speculation that given the occurrence of a collision this is the spot on this wrecked car where it may have occurred. In the absence of plaintiff’s directing Rearick to look for such a spot it seems doubtful that the black mark would ever have been noticed.
We have thus concluded that the trial court did not err in denying plaintiff’s motion for a directed verdict and in doing so have likewise disposed of plaintiff’s first specification of error, that the jury erred in overlooking the testimony of plaintiff, Hebert, and Rearick. We are convinced that the jury simply did not believe them and we cannot say this constituted manifest error for the reasons already discussed.
However, plaintiff argues that defendant utilized improper trial tactics which, combined with objectionable behavior on the part of the trial court, misled the jury and caused it to reject plaintiff’s evidence. In this connection plaintiff's second specification of error concerns questions asked by defendant’s counsel in cross examining plaintiff which alluded to an alleged shooting by plaintiff of his brother-in-law, plaintiff’s previous bankruptcy, and plaintiff’s attempt to keep a patent out of a community settlement with his divorced wife.
Each of these subjects was before the jury by virtue of stipulations between the parties admitting into evidence plaintiff’s divorce and bankruptcy proceedings. As to the shooting, however, even though it was mentioned in the stipulated records, the trial court instructed the jury to disregard references to it. While counsel persisted in referring to it after being admonished by the judge the first time his conduct is explained by his belief that the matter was already properly before the jury and by his typical adversarial enthusiasm. Once again the jury was instructed to disregard the shooting reference.
As to the bankruptcy, it too was before the jury by stipulation and it was surely relevant on the issue of plaintiff’s alleged economic losses. Finally, defendant’s counsel attempts to show that plaintiff defrauded his divorced wife out of an interest in a patent. However, this fact *995 was established in Howes v. Howes, 436 So.2d 689 (La.App. 4th Cir.1983) and was before the jury on stipulation. It was relevant to impeach plaintiffs credibility.
By specification three plaintiff contends he was unfairly prevented from presenting testimony concerning his own insurance policy which had been stipulated into evidence. However, the trial court properly ruled out this testimony as to the policy’s contents since the best evidence of such was the policy itself.
By specifications four and eight plaintiff complains about the trial court’s conduct in lecturing him in front of the jury. In the first instance, plaintiff, who is a physician, testified he was bleeding after the accident from the occipital portion of the scalp. The trial judge stopped and admonished him not to use medical terms when describing his injuries but to use lay terms. When plaintiff was cross examined, however, defense counsel was allowed to ask if he agreed with the police report that his injuries were “moderate”. Plaintiff’s counsel objected that since medical terms had been ruled out on direct examination the same rule should apply on cross-examination. This objection was overruled with the explanation that the rules are more relaxed on cross than on direct examination. We agree with this ruling. Even assuming, however, that the ruling was incorrect, the error was harmless.
Specification eight arose out of a question asked of plaintiff about his tax returns while he was under cross examination. In response, plaintiff said he didn’t know whereupon the trial judge chastised him reminding him that he had testified he had a Ph. D. degree and insisting that he answer the question. Here again we are not convinced that this exchange constituted reversible error. Plaintiff argues that these examples show that he was subjected to harasssment throughout the trial by both defense counsel and the judge, but the record does not support the charge. In general, plaintiff was treated with respect notwithstanding a handful of instances where he was subjected to rigorous and pointed cross examination by an adversary who was vigorously trying his case and some occasions where plaintiff’s conduct caused the judge to issue stern instructions and admonitions to him. This is the stuff out of which heated trials are made, and we cannot conclude in this case that reversible error was committed.
Specification six refers to a ruling prohibiting plaintiff from describing the appearance of the interior of the wrecked automobile in connection with a photograph of the same subject. We fail to see how this ruling was an abuse of the discretion afforded a trial judge to control examination or how this had any impact on the trial’s outcome at all.
As to specification seven plaintiff argues that the court erred in permitting two defense counsel to participate in the trial. First, the record does not support that this occurred. Second, even if it did occur no contemporaneaous objection was made so the objection was waived. Third, allowing such a procedure is regulated within the trial court’s discretion.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED