564 So.2d 682 (1990)
STATE of Louisiana, ex. rel. William J. GUSTE, Jr., Attorney General
v.
NICHOLLS COLLEGE FOUNDATION and Donald L. Peltier.
No. 90-C-0648.
Supreme Court of Louisiana.
June 28, 1990.
Rehearing Denied September 5, 1990.
*684 William Guste, Jr., Atty. Gen., James M. Ross and Stephen Irving, Asst. Attys. Gen., for plaintiff-applicant.
Daniel A. Cavell, for respondent-defendant Nicholls College Foundation and Peltier.
Weiss Gonzales, amicus curiae.
CALOGERO, Chief Justice.[*]
Until now, the Inspector General of the State of Louisiana has been unsuccessful in examining certain records of the Nicholls College Foundation, notwithstanding the provisions of the Public Records Act, LSA-R.S. 44:1, et seq. We granted writs in this case to review the Inspector General's contention that both lower courts erred in denying him the opportunity to examine records that he alleges are "public records", and thus, subject to inspection under LSA-R.S. 44:31. For the reasons that follow, we reverse the district court's granting defendants' motion for directed verdict and remand to the district court for further proceedings.
In connection with an investigation conducted at Nicholls State University, the Office of the Inspector General of the State of Louisiana sought to examine the financial records of the Nicholls College Foundation, a non-profit corporation, apparently on the belief that the Foundation had received "public funds" through a "donation" from the Nicholls State University Alumni Federation. The Federation is also a non-profit corporation. One David Morales, an auditor with the Inspector General's office, had previously inspected the records of the Federation and determined from that inspection and other sources that the Federation received "public funds" through a student "self-assessment" fee. The fee was approved by the student body of Nicholls State College in 1962, and had since been collected by Nicholls State from registering students (along with the students' tuition payments) for the benefit of the Nicholls State University Alumni Federation.
The assessed fee was initially 85¢ per semester in 1962. In 1969, the students voted to increase the fee to $1.35.[1] The assessment for the alumni federation is mandatory for all students registering for seven hours or more each semester at Nicholls State. The money is deposited, along with other fees and tuition, in Nicholls State's general operating account, and transferred to the Alumni Federation in one lump sum payment each semester after registration is completed.
In 1984, the Board of Directors of the Alumni Federation decided to give to the Nicholls College Foundation ten percent (10%) of all the student assessed fees received thereafter by the Federation from the University. This payment was apparently unsolicited, and the specific purpose not evident, at least insofar as is revealed by this record.
The Inspector General's auditor inspected the Federation's records in connection with the investigation at Nicholls State, without opposition from the Federation. Donald L. Peltier, Foundation president and a named defendant in this suit, however, refused to allow an inspection of the Foundation's records. The Attorney General of the State of Louisiana filed suit on behalf of the Inspector General to obtain a court order allowing examination of the Foundation's records pursuant to the Public Records Act. LSA-R.S. 44:1 et seq. Following presentation of the State's case at the trial on the merits, the district court *685 granted a directed verdict for the defendants, the Foundation and Peltier, finding that the State had not carried its burden of proving that the records were subject to inspection under the Public Records Law. The court of appeal affirmed. 558 So.2d 1232. We granted writs upon application of the Inspector General, represented here by the Attorney General. The Louisiana Press Association has filed a brief as Amicus Curiae in support of the Attorney General's position.
We find, for the reasons explained below, that the State did present sufficient evidence to present a prima facie case, and that the district court erroneously granted the defendants' motion for directed verdict.
The Federation, whose records were made available to the Inspector General at the latter's request, states in its Articles of Incorporation that its purpose is to "foster[], protect[ ], and promot[e] the welfare of Nicholls State University."[2]
The Foundation, whose records are the subject of this litigation, is also a tax-exempt, non-profit private corporation, like the Federation. Its purpose, as stated in its Articles of Incorporation, is to:
"[P]romote, stimulate and improve the educational, cultural, moral and material welfare of Nicholls State College ... to give financial aid to needy and deserving students; to promote and encourage research and scholastic excellence among the faculty members of Nicholls State College; ..."
The Public Records Law allows inspecting, reproducing or obtaining reproductions of any public record. LSA-R.S. 44:31. "Public records" include all books and records (a) used in the transaction of any business "performed by or under the authority of the constitution or laws of this state", or "under the authority of any ordinance, regulation, mandate, or order of any public body", or (b) all books and records "concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state." LSA-R.S. 44:1(A)(2).[3]
The Act defines "public body", in LSA-R.S. 44:1(A)(1), as "including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function."[4]
The Attorney General contends that the Foundation's records are subject to examination because the Foundation is a "public body" under the terms of LSA-R.S. 44:1(A)(1). Alternatively, he contends that if the Foundation is not a public body, the Inspector General is nonetheless entitled to examine the Foundation's books and records regarding receipt or payment of money received or paid under authority of the Constitution or laws of the state. The argument is, essentially, that the funds are public money paid by a public body, the Federation, under authority of the constitution or the laws of this state, even if paid to a private nonprofit corporation. He relies on Carter v. Fench, 322 So.2d 305 (La.App. 1st Cir.1975), writ denied, 325 So.2d 277 (La.1976), for the proposition that the student *686 fees transmitted from the University to the Federation, and then from the Federation to the Foundation, are public funds.[5]
On the other hand, the defendants allege that the Foundation is not a public body and the funds it receives from the Federation are not public funds. Rather, the transfer was a simple donation of money without responsibility on the part of the Foundation to perform any function in return. Furthermore, the funds are too far removed from the public purse, if in fact the funds were ever public, but rather is more akin to receipt of money for goods or services rendered as would be the case with an independent private, perhaps business, corporation. Additionally, the Foundation takes issue with the characterization of the Federation as a public body, and contends further that the Federation is an indispensable party, the determination of whose status cannot be made without the Federation's being a party.
The evidence presented at the trial on the merits indicates that the Foundation's domicile and registered office is the office of the president of Nicholls State. The Foundation's telephone number is a University telephone number listed in the student directory. The Foundation is housed in the building occupied by the Federation on the Nicholls campus, the NSU Office of Alumni Affairs. That building is leased by the Federation from the State of Louisiana through the Louisiana State Board of Trustees for State Colleges and Universities for a small sum paid only at the outset of the lease.[6] The evidence also shows that the Foundation transmits funds to the University to pay the salary of one Gerald Talbot, an employee of the University who works at the Nicholls State Farm. Two university employees, both civil servants of the State of Louisiana, perform the administrative duties required by, and for, the Federation. Those university employees, in carrying out their duties, prepare the check by which ten percent of the student fees received by the Federation from the University is transferred to the Foundation each semester. One of those employees, Eleanor Talbot, also performs administrative and secretarial duties for the Nicholls State Farm.
Furthermore, the record also reveals that, at the time the Foundation was incorporated, one of its registered agents was Dr. Vernon Galliano, whose address is listed as Nicholls State College, Thibodaux, Louisiana. Dr. Galliano also is listed as a subscriber to the Foundation and a member of the original Board of Directors of that corporation.
We approach the resolution of this case by considering some preliminary questions the answers to which will assist us in reaching our decision concerning whether the Foundation's records come within the scope of the Public Records Act.
1. Is the Foundation a public body?
2. Is the Federation a public body?
3. Is the money transferred by the Federation and received by the Foundation public funds?
4. Was the money transferred in furtherance of a constitutional or legal duty of the Federation?
5. Correspondingly, was the Foundation, if not a public body, nonetheless charged upon receipt of the money to use it in furtherance of a constitutional or legally endowed responsibility?
We must keep in mind, while answering these questions, that the law favors a liberal construction of the public records law "so as to enlarge rather than restrict access to public records by the public." Lewis v. Spurney, 456 So.2d 206 (La.App. 4th *687 Cir.), writ denied, 457 So.2d 1183 (La.1984) and 458 So.2d 488 (La.1984); Amoco Production Co. v. Landry, 426 So.2d 220 (La. App. 4th Cir.), writ denied, 433 So.2d 164 (La.1983); Trahan v. Larivee, 365 So.2d 294 (La.App. 3d Cir.), writ denied, 366 So.2d 564 (La.1979).

The Foundationa public body?
Whether the Foundation is a public body is a close question because of the sparse record presented in this case. While the evidence may lean in favor of the State, we cannot make the determination that the Foundation is a public body without a greater appreciation of the duties and functions of the Foundation than is permitted by this record. However, the issue before us can be resolved without making that determination, as will be seen below.

The Federationa public body?
We conclude that the Alumni Federation is a public body within the intendment of the Public Records Act. A "public body", for purposes of the Act, is "a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function." LSA-R.S. 44:1(A)(1). The Federation enjoys a close affiliation with Nicholls State University as evidenced by its residence on campus in a public building for which it pays only nominal rent, and by its use of state civil service employees to run its office. The "Alumni Office" appears as a line-item in the budget of the University, through which the Alumni Federation's employees are paid. The Federation states in its Articles of Incorporation that its purpose is to promote the University, which was created for the purpose of providing public education, a governmental function. Spain v. La. High School Athletic Assoc., 398 So.2d 1386 (La.1981). The duties it performs in promoting the educational purposes of Nicholls State are functions that, no doubt, emulate functions also the responsibility of and/or performed by Nicholls State. Therefore, we conclude that the Federation, because of its close relationship with Nicholls State, is a "quasi-public" nonprofit corporation "designated as an entity to perform a governmental or proprietary function," and, thus a "public body" for purposes of the Public Records Act. See Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App. 1st Cir.1978). We also note in passing that the Federation voluntarily opened its records for inspection by the Inspector General's office.[7]

The student assessed feespublic funds?
We also find that the "student assessed" fees are "public funds". The First Circuit considered the status of student assessed fees in Carter v. Fench, 322 So.2d 305 (La.App. 1st Cir.1975), writ denied, 325 So.2d 277 (La.1976), and held that the fees become public funds when paid by the students to the university because imposed on the students in order to gain admission. The student fees collected for the Alumni Federation are similarly public funds. Thus, the recipients of those funds, "whether they be governmental, public or private bodies, are subject to the Public Records Law insofar as their financial records are concerned." Carter v. Fench, 322 So.2d at 307.
The fees, paid by registering students along with tuition, are mandatory in the sense that the students do not have the option of whether or not to pay the fee. It seems fair to say, therefore, that it was imposed by the University under its constitutional and statutory powers, albeit responsive to a self-assessment determination made by the student body, originally in 1962 and supplemented at least one other *688 time (in 1969). Thus, the funds received by the Federation are public monies.

The Federationa legal or constitutional duty in transferring the funds?
The Federation was formed to further the educational goals of Nicholls State University, and, as we determined hereinabove, is a quasi-public body because "designated as an entity to perform a governmental or proprietary function." Surely those educational goals of the Alumni Federation fit within the legal and constitutional duties of the University, in addition to constituting a charge under its charter. The Federation has seen fit to transfer a portion of the student fees to the Foundation. The Louisiana Constitution, however, prohibits donations by the state to "any person, association, or corporation, public or private", La. Const. art. 7, § 14(A). Because the central purpose of both organizations is to promote the University, it can be presumed that the transfer was in furtherance of the respective groups' purposes, and not an impermissible donation of public funds. We can, therefore, assume that the transmission from the Federation to the Foundation was in furtherance of the Federation's discharging its constitutional or legal duties of furthering public education; i.e., it must have been given by the Federation in pursuit of the Federation's legally endowed goals.

The Foundationa legal or constitutional duty upon receipt of funds?
Even assuming the Foundation is not a public body, it is evident that they accepted the funds in connection with a constitutional or legally endowed responsibility. This is not a case where the recipient of public funds has provided goods or services, and as to which there may be independent statutory authority requiring the maintenance of books and records for auditing purposes. See, for instance, LSA-R.S. 39:1516, the statute concerning state procured negotiated contracts. Rather, it is one where the recipient has accepted funds to assist and further the goals of a public body. The Foundation has undertaken, as its purpose, assistance to the University, its faculty, and its students, by promoting public education, a purpose that coincides with the University's and the Federation's constitutional and legal duties. The transaction between the Federation and the Foundation constitutes a transfer of public funds (rather than simply a donation, which is prohibited by La. Const. art. 7, § 14(A)). In essence, it is somewhat similar to what transpired in Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App. 1st Cir.1978).[8] Because the objectives of the Federation, the Foundation and the University coincide in the furtherance of a governmental purpose, and because a simple donation would be illegal under La. Const. art. 7, § 14(A), we find that the money was given and accepted "under authority of the constitution and the laws of this state" in furtherance of a governmental purpose. It was not a donation in the sense comtemplated by La. Const. art. 7, § 14(A).
We summarize our conclusions as follows: 1) we need not determine whether the Foundation is a public body; 2) the Federation is indeed a public body under the Public Records Act; 3) the funds transferred from the Federation to the Foundation are and were public money; 4) the funds were transferred in the discharge of the Federation's constitutional or legal duties; and 5) the funds were accepted by the Foundation, assumedly a nonpublic body (a private nonprofit corporation) with a commitment to assist the Federation in carrying out its constitutional and legal duties in public education.
The district court granted defendants' motion for directed verdict and the court of appeal affirmed. However, a motion *689 for directed verdict should be granted only if the facts and inferences are so overwhelmingly in favor of the moving party that the court finds that reasonable men could not arrive at a contrary verdict. La. C.C.P. 1810. Howes v. Allstate Ins. Co., 480 So.2d 991, 993 (La.App. 4th Cir.), writ denied, 484 So.2d 672 (La.1986); Cuccia v. Cuccia, 394 So.2d 840, 841 (La.App. 4th Cir.1981). We find that the evidence in this case is not so one-sided that reasonable men could only find in the defendants' favor. In fact, on the record the reverse is more nearly so.
The defendants contend that in this holding there is the potential for invading the books and records of private corporations whose missions and activities are almost entirely private, and whose receipt of public money other than through payment for goods and services in a given case may be miniscule. They argue that allowing examination will discourage private donations to profit and nonprofit corporations and will ultimately hurt the recipients. The answer to this is not difficult. If a private corporation accepts public money from a public body in the discharge of the latter's constitutional or legal duties, it must disclose records concerning those transactions, including the receipt and expenditure of those funds. If those corporations wish to avoid divulging nonpublic receipts and expenditures, they need only maintain separate and distinct books, accounts and records.
In this case, the right of inspection is limited to the records of receipts and expenditures of public funds. The Inspector General does not have the right to examine records regarding private donors, nor other receipts or expenditures unrelated to the transmitted fees. Indeed, the Inspector General has not sought such relief.

DECREE
For the foregoing reasons, the judgment of the district court granting the defendants' motion for directed verdict and the judgment of the court of appeal are reversed. The case is remanded to the district court for further proceedings.
REVERSED AND REMANDED TO THE DISTRICT COURT.

* * *
COLE, J., dissents and assigns reasons.
COLE, Justice, dissenting.
It is a fiction to say the funds were given and accepted under the authority of the constitution or the laws of this state. The Foundation has no constitutional or legally endowed responsibility to do anything nor has it been designated as an entity to perform a governmental or proprietary function. It is not a public body subject to the Public Records Act.
NOTES
[*] Judge MELVIN A. SHORTESS of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] Cancelled checks for the past five years presented at the trial on the merits reveal the amounts received by the Federation through the student fee. Checks presented from 1985 total $9,678.50, apparently representing only the fall semester; 1986 totals are $15,809.20; 1987 totals are $15,879.15; 1988 totals are $16,233.35; only one check was presented for 1989, which totalled $7,179.95. The totals for 1985 and 1989 apparently represent only one semester, while the remaining totals apparently reflect receipts from the fall, spring and summer semesters.
[2] The 1985 amended Articles of Incorporation state the purpose of the Federation as follows:

"The corporation is organized exclusively for charitable, religious, literary, educational, and scientific purposes, ... including the purpose of fostering, protecting, and promoting the welfare of Nicholls State University...."
[3] LSA-R.S. 44:1(A)(2) provides that: "[a]ll books, records, ... having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are `public records,' except as otherwise provided in this Chapter or as otherwise specifically provided by law."
[4] "As used in this Chapter, the phrase `public body' means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function." LSA-R.S. 44:1(A)(1).
[5] In Carter v. Fench, 322 So.2d 305 (La.App. 1st Cir.1975), writ denied, 325 So.2d 277 (La.1976), the Student Government Association of Southern University in Baton Rouge was a student association which received from that University a portion of each student's registration fee. That court found those funds were "public funds", and thus, subject to the Public Records Act.
[6] The lease was entered into between the Board of Trustees and the Federation on February 6, 1987, and provides for a 20-year term at a total consideration of $100. The lease is effective only as long as the building is used for alumni purposes.
[7] In addition, we find that the district court was correct in overruling the defendants' exception of nonjoinder of the Federation, allegedly an indispensable party. An indispensable party is one who is "so interrelated" and "would be so directly affected by the judgment, that a complete and equitable adjudication ... cannot be made unless they are joined in the action." La. C.C.P. art. 641. The Federation is not involved in the subject matter of this litigation (the Inspector General is not now seeking inspection of its records), nor does the determination, in this litigation, that it is a public body have res judicata effect on the Federation.
[8] The open meetings law, not the Public Records Act, was at issue in Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App. 1st Cir.1978). However, that case involved a similar factual scenario in which a private nonprofit corporation administered an antipoverty program enacted by the City Council. Because the non-profit corporation performed a "governmental function", it was subject to the open meetings law.