Dear Ms. Runnels:
You requested an Attorney General's opinion to determine whether a parish voluntary council on aging is essentially a public institution subject, for example, to the laws on public scrutiny or a private, non-profit corporation shielded from public terms and conditions when administering private funds. It is perhaps the most difficult question ever asked concerning parish voluntary councils on aging; it is the ultimate question piercing legal theory all the way through to the very essence of these entities. Although there is a strong case in statutory interpretation to conclude that such councils are public entities in every respect, it is our opinion, in the end, that they were intended to be essentially private entities to which some public functions would be delegated as mandataries of the State.
Parish voluntary councils on aging are established and provided for by law (R.S. 46:1601 et seq.). They are statutorily charged with the performance of public duties. R.S.46:1604. They are allocated, administer, operate on, and expend governmentally appropriated public funds for the public purpose of carrying out their public duties. [It is a prohibitory violation of Art. 7 § 14, of the Louisiana Constitution (1974) for public funds to be given to a private organization for private use.] They must operate strictly in accordance with law and the policies and regulations of the state's Office of Elderly Affairs, which can cause the revocation of their respective charters for non-compliance therewith. R.S. 46:1605.
R.S. 46:1602(A) sets forth the procedures for establishing a parish voluntary council on aging. It states:
 Any five or more citizens of a parish who possess the qualifications set forth in this Section may associate themselves together for the purpose of making application to the office of elderly affairs, hereinafter in this Chapter referred to as the office, for a charter for a parish voluntary council on the aging. The application shall set forth the names, addresses, and occupations of the persons who are to serve as members of the initial council and such other information as is required by this Chapter to be included in a parish charter.
 Immediately upon the receipt of an application, the office shall make such examination and investigation as it deems advisable. After the application has been approved by the executive director of the office, it shall be transmitted to the secretary of state, who is hereby authorized to issue a charter which thereafter shall constitute authority of the voluntary council on the aging to function in the parish for which the charter was issued in accordance with the provisions of this Chapter.
 Immediately upon issuance of the charter by the secretary of state, the parish voluntary council on the aging will be authorized to receive public funds from any governmental or political subdivision. Such funds shall be subject to audit by the legislative auditor or his duly authorized representative.
We have learned from the Secretary of State's office that, in actual practice, what has taken place is that persons desiring to form parish voluntary councils on aging have been using the form and mechanics of incorporating private, non-profit corporations. When their articles of incorporation are received by the Secretary of State's office, the Corporations Division of that office has been issuing private, non-profit corporation charters in simple response to the face value of the articles of incorporation, without questioning the true status of the organization, one way or the other, under the law. It is correct that such organizations are to be "non-profit making," R.S. 46:1602 (D), but there appears to be no statutory clarification as to their being either public entities or private corporations. The ambiguity and silence in these statutes regarding this question is uncharacteristic of these kinds of provisions generally. For example, R.S. 23:62(1) defines the analogous "community action agency" as "a public agency or private non-profit corporation having authority under its charter or bylaws, or both, to administer community action programs, which has been designated as a community action agency by the parish governing authority."
A very strong case, indeed, can be made that parish voluntary councils on aging are, intrinsically, public entities entirely and not at all private corporations, despite the mere form and mechanics by which they were de facto organized and chartered: They are purely creatures of law and are organized under that law for public purposes. The law governing them does not expressly provide for their private, non-profit corporate status as does, for example, R.S. 23:62(1) for analogous community action agencies. If the statutes intended them to be intrinsically private, non-profit corporations which are merely delegated some public functions as State mandataries, their governing statutes would not have provided, as they do, for their complete annihilation in the revocation of their charters by the Office of Elderly Affairs for non-compliance with State law or Office of Elderly Affairs policies and regulations but would have only provided for withdrawal of their public-function authority and designation (withdrawal of their State mandate).
What has swayed our opinion in the other direction — that they are statutorily intended to be, intrinsically, private, non-profit corporations which are delegated public functions as State mandataries — is the clear and persistent, statutorily-expressed intent that their hallmark characteristic be their volunteerism. They are governed locally by volunteers and are, by and large, staffed with volunteers. Even those staff personnel receiving compensation may often receive a level of compensation that is at a "volunteer's pay scale," that may pay expenses, but not provide a salary comparable to and competitive with that in the overall economy. If the statutes were interpreted to require parish voluntary councils on aging to be entirely public agencies, their staff would necessarily fall under the State classified civil service system. See Art.10, §§ 1 et seq., La. Const'n (1974). Such a situation, would be completely inconsistent with the statutorily-expressed volunteerism characteristic of these councils.
Also, consistency with our prior opinions leads to the conclusion that parish voluntary councils on aging are statutorily intended to be, intrinsically, private, non-profit corporations which are delegated public functions as mandataries of the State. Insofar as they are, intrinsically, private, non-profit corporations, they are not subject to Local Government Budget Act 504 of the 1980 Regular Session. See Attorney General Opinion No. 80-1151. Insofar as they are mandataries of the State, they are State agencies with respect to sales and use taxes and public bid law and procurement provisions. See Attorney General Opinions Nos. 83-565 and 85-198. Insofar as they are private, non-profit corporations of primarily a voluntary component, their employees are not in the State classified civil service and may take active parts in political campaigns during non-working hours. See Attorney General Opinion No. 86-622.
Even where the entity is otherwise intrinsically a private one, of course, its being "organized to perform and [performing] a governmental function," Seghers v. Community Advancement, Inc. et al., 357 So.2d 626, 627 (La.App. 1st Cir. 1978) and its being "supported almost exclusively by tax derived funds," id., in the distribution of which "[i]t has been able to and has set policy," id., is enough to classify such entity as "a public body or authority within the intendment of the ["sunshine"] statute," id. The court in Seghers explained:
 "The fact that Community Advancement, Inc. was organized under the legal mechanics of the private non-profit corporation law of the state should not result in its immunity from the statute [governing public bodies and authorities]."
Id., at 627-928
If there were any lingering doubts that the exercise of governmentally allocated power and authority or the use of public funds and resources could be shielded from public scrutiny behind otherwise private organizations and entities, those doubts were put to rest by the Supreme Court of Louisiana in State ex rel. Guste v. Nicholls College Foundation, 564 So.2d 682
(La. 1990). That case confirmed that intrinsically private, non-profit corporations — there, the Nicholls College Foundation and the Nicholls State University Alumni Federation — to the extent they take on the performance of a governmental function and use public funds and resources, are public bodies within the meaning of the Public Records Act (R.S.44:1 et seq. and 31 et seq.).
Thus, even though, in our opinion, parish voluntary councils on aging are intrinsically private, non-profit corporations, they would have to be treated as public bodies under public scrutiny laws to the extent that they performed governmental functions and objectives, received and disbursed public funds, and/or used public facilities or resources. However, when handling funds which are given to them from private sources and which are not converted to public funds by being dedicated to public use or by being commingled with public funds, they act as the private, non-profit corporations they intrinsically are.
Trusting this opinion has adequately answered your very difficult inquiry, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
TSH:cdw-0725f