Dear Mayor Baden:
You have requested an opinion of the Attorney General regarding a Cooperative Endeavor Agreement entered into by and between the Louisiana Department of Health and Hospitals (DHH), the Office of Mental Health (OMH), Central Louisiana State Hospital (Hospital), the City of Pineville (City) and the Cenla Community Action Committee, Inc. (CCAC). Under the terms of the agreement, the City has taken possession of the central downstairs portion of one of the Hospital's buildings which will be used as a federal food commodity distribution center, warehousing, and administrative space for the Pineville CCAC branch office. The City is paying for all basic services provided to it on a prorated basis as to the 2,744 square feet of the building being occupied by CCAC. The services include electricity, water, gas, pest control, grounds maintenance, trash pick-up and fire protection services. Actual billing is in accordance with the cost of total services to the Hospital. CCAC is responsible for procuring worker's compensation insurance, unemployment compensation coverage and general liability coverage at its own cost.
You specifically ask whether it is legally permissible for the City to pay the prorated cost of the services which are attributable to the space occupied by CCAC.
We have been advised by representatives of CCAC that the program being administered from the Hospital is the USDA Commodity Program under which a federal grant is made available to the State of Louisiana whereby surplus federal food commodities are received and distributed to local agencies for distribution to low income individuals.
In answer to your question, I refer you to Article VII, Section14 of the Louisiana Constitution of 1974 which provides, in pertinent part, the following:
 "(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged or donated to or for any person, association, or corporation, public or private . . .
 (B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy. . .
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
The Supreme Court has interpreted Article VII, Section 14 to be violated whenever the State or a political subdivision seeks to give up something of value when it is under no obligation to do so. City of Port Allen v. Louisiana Municipal RiskManagement Agency, 439 So.2d 399 (La. 1983). However, inGuste v. Nicholls College Foundation, 564 So.2d 682
(La. 1990), a transfer of funds by the Nicholls State University Alumni Federation to the Nicholls College Foundation was held to be given and accepted "under the authority of the constitution and laws of this state" as the funds were "transferred in the discharge of the Federation's constitutional or statutory duties" and were accepted by the Foundation, assumedly a non-public body (a nonprofit corporation) with a commitment to assist the Federation in carrying out its constitutional and legal duties in public education".
It is axiomatic that a municipal corporation, under its police power, can provide for the support of the poor and necessitous within their respective jurisdictions. Vionet v. FirstMunicipality, 1849, 4 La.Ann. 42. Within this power is clearly the authority for municipalities to participate in a federal program for the distribution of surplus federal food commodities to the indigent.
Based on our understanding of Article VII, Section 14, as interpreted by the Supreme Court, and the authority of a municipality under its general police power, it is the opinion of this office that the City can expend public funds for the purpose of distributing food to its indigent citizenry. The City may do so by establishing its own program or may pursue those goals by entering into a cooperative endeavor agreement with CCAC, a nonprofit corporation, dedicated to administering programs for the aid and support of the needy.
We have reviewed the Cooperative Endeavor Agreement, in question, and believe it comports to the provisions of Article VII, Section 14 and the general police power of the City. The purpose to be attained by the agreement is obviously public, in nature, and the cost of the services being provided CCAC and paid by the City (i.e., $200 to $400 per month) is commensurate to the services being provided by CCAC to the City's indigent population.
Therefore, it is the opinion of this office that the City of Pineville may, under the terms of the Cooperative Endeavor Agreement, pay the cost of all basic services provided to it by the Hospital on a prorated basis as to the 2,744 square feet of building space occupied by CCAC.
With regard to the form of the Agreement, itself, it should be noted that Executive Order EWE 93-4 promulgated on February 16, 1993, requires all Cooperative Endeavor Agreements between the state and its political subdivisions or political corporations and any public or private corporation to contain provisions which will condition its implementation on the availability of funds to fulfill the requirements of the contract. Accordingly, we recommend that the Agreement be amended to include such a provision.
Trusting this answers your inquiries, I am
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/gbe
Honorable Fred H. Baden, Mayor City of Pineville P.O. Box 3820 City Hall Pineville, La 71361
Date Received: Date Released:
Robert E. Harroun, III Assistant Attorney General