Dear Mr. Hebert:
In your capacity as an Assistant City Attorney to the City of Lafayette, you have requested the opinion of this office regarding contracts of the City of Lafayette with private and/or non-profit entities, referred to in your letter as "external agencies". You advise that the City of Lafayette, in furtherance of the duties and purposes of the City's Department of Community Development, has entered into, and will enter into, certain contracts with external agencies for the provision of various social services or educational, recreational, or cultural programs within the City of Lafayette.
Specifically, you have asked this office to address whether such contracts constitute prohibited donations of public funds under Article VII, Section 14 of the Louisiana Constitution of 1974.
According to your letter, the funds paid to each external agency by the City of Lafayette are paid only in accordance with the contract, and payments are only made for services which are consistent with, and supportive of, the duties and functions of an established department of the City of Lafayette. You also advise that all services provided by the external agencies will be provided within the City of Lafayette. Furthermore, you advise that each external agency is required to make progress reports and an accounting to the City, and that each external agency is subjected to audits by the City in order to verify that the funds are being used for the public purpose set forth in each contract.
Your question raises a number of issues, as it is presented broadly, as opposed to being limited to a particular contract, for particular services, with a particular "external agency".
As I am sure you are aware, the mere execution of a document nominated as a "contract" does not obviate the constitutional prohibition of donations of public funds by political subdivisions. However, Art. VII, Sec. 14 (C) authorizes the state and its political subdivisions to engage in "cooperative endeavors" for a public purpose with other governmental agencies, public or private corporations, or individuals. This office has previously opined that a constitutionally sanctioned cooperative endeavor must meet a three part test: (a) the public agency has a legal obligation to expend public funds, (b) the expenditure must be for a public purpose, and (c) the expenditure must create a public benefit proportionate to its cost. Attorney General's Opinion No. 93-164.
In our opinion, contracts such as the ones you describe can be considered constitutionally sanctioned cooperative endeavors as long as the contracts meet the three part test set forth above.
As you are aware, the requirement for a "legal obligation" for the expenditure or transfer of public funds has been recognized by the Louisiana Supreme Court in City of Port Allen v. LouisianaMunicipal Risk Management Agency, Inc., 439 So.2d 399 (La. 1983). As stated in the City of Port Allen decision, "even if political subdivisions cooperate for a public purpose, they still may not give away their assets . . . merely for a public purpose." As we interpret that decision, the "legal obligation" referred to in City of Port Allen must be present even if the "external agency" provides a public benefit or service, and even if the services provided are "consistent with, and supportive of the duties and functions of an established Department of the City of Lafayette".
This office has construed the "legal obligation" requirement referred to in the City of Port Allen decision to be a requirement that the purpose and power for a particular expenditure of public funds be "sanctioned" or "authorized by law" or in the "discharge of a legal duty". Attorney General's Opinion No. 92-204. Our opinions also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds. Attorney General's Opinions Nos. 92-543, 92-494, 92-402, 92-204.
Your letter suggests that the Supreme Court, in City of PortAllen, may not have been attempting to announce the requirement of a `legal obligation' as a hard and fast rule. We respectfully disagree with your suggestion, as the Court has subsequently adhered to its requirement of a `legal obligation' or `legal duty'. In Guste v. Nicholls College Foundation, 564 So.2d 682
(La. 1990), a transfer of public funds by the Nicholls College Foundation was held to be "given and accepted `under the authority of the constitution and laws of this state' in furtherance of a governmental purpose", as opposed to a donation. The Court concluded that the funds were "transferred in the discharge of the Federation's constitutional or legal duties", and were accepted by the Foundation, "with a commitment to assist the Federation in carrying out its constitutional and legalduties". (Emphasis added).
This office's recognition of the necessity of a "legal obligation" for the transfer of public funds is illustrated by Attorney General's Opinion No. 92-494, which provides that an assessor has no "legal obligation" to fund a teen organization or a mental health unit, and by Attorney General's Opinion No. 92-204, which provides that a hospital service district cannot pay the Chamber of Commerce dues of its hospital physician.
You have also requested this office to give consideration to the argument that "remunerative donations" may not be constitutionally prohibited. In light of our opinion that a legal obligation for the expenditure of public funds must be present if same is to be considered constitutionally sanctioned, a discussion of "remunerative" donations is pretermitted.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 0373n