Dear Mr. Ponder:
Reference is made to your request for an opinion of this office regarding potential improvements to private sewer service lines at the expense of the City-Parish of East Baton Rouge.
According to your correspondence, the City-Parish has been required by the Environmental Protection Agency ("EPA") to substantially reduce sewer discharge. In conjunction with a consent decree between the City-Parish and the EPA, the City-Parish is undertaking a pilot program to correct all leaks in the main sewer collection lines, and the lateral and service lines in a particular geographic area. You further advise that the project requires that all leaks in said lines must be repaired within a limited time frame.
As noted in your letter:
 "The City-Parish currently has the authority to require the property owner to make any necessary repairs to sewer lines on their property under penalty of fines and/or jail. In the event of an immediate threat to the public health, safety and welfare, the City-Parish also has the authority to make the necessary repairs and place a lien on the property to recover any associated costs. The City-Parish also has the authority under the provisions of L.S.A. R.S. 33:3981 and 3996 to construct a new system and pay all or a portion of the costs."
However, even though the City-Parish has such authority, you have requested our opinion as to whether the City-Parish can make the necessary repairs to sewer lines that are on private property and absorb all or some of the repair costs. Specifically, you ask this office to examine whether the provisions of La. Const. Art.VII, Sec. 14 are violated if the City makes the repairs without seeking to recover the cost of repairs made on private property, in light of the fact that the City-Parish has a legal duty, under its consent decree with the EPA, to conduct the pilot program.
As you are no doubt aware, La. Const. Art. VII, Sec. 14 generally prohibits the state and its political subdivisions from loaning, pledging, or donating public funds, credit, property, or things of value to or for any person, association or corporation, public or private. The Supreme Court has interpreted Art. VII, Sec. 14 to be violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. City of Port Allen v. Louisiana Municipal Risk Agency,439 So.2d 399 (La. 1983).
This office has construed the "legal obligation" requirement referred to in the City of Port Allen decision to be a requirement that the purpose of and power for a particular expenditure of public funds be "sanctioned", or "authorized by law", or in the "discharge of a legal duty". Op. Atty. Gen. No. 92-204. See also: Guste v. Nicholls College Foundation, 564 So.2d 682 (La. 1990). The opinions of this office also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds. Op. Atty. Gen. Nos. 92-543, 92-494, 92-402, 92-204.
There can be no question but that the City-Parish of East Baton Rouge has no general obligation or authority to individual property owners or citizens to expend public funds to improve or repair the sewer lines located on their private property. Therefore, the issue that this office must address is whether the City-Parish's agreement with the EPA provides sufficient legal obligation or authority for the City-Parish to make repairs to private sewer lines.
Respectfully, we must advise that in our opinion the City-Parish may not assume the cost of sewer line repairs to lines located on private property, as the assumption of those costs would be tantamount to a donation. In accord: Op. Atty. Gen. Nos. 98-432, 97-99, 96-348, 90-498, 78-1562. By virtue of the City-Parish's authority to compel private property owners to make necessary repairs, the City-Parish is not required or obligated to fund the repairs with public money. Although the City-Parish is obligated to the EPA to reduce sewer discharge, it can apparently accomplish what needs to be done on private property by requiring necessary repairs to be made by the property owners. Since the City-Parish has the authority to require private property owners to make sewer repairs, the need for the City-Parish to publicly fund the repairs is obviated. In accord: Op. Atty. Gen. No. 98-432, 97-99, 93-789.
Please note that La. Const. Art. VII, Sec. 14(B) contains an exception to the general rule of Art. VII, Sec. 14 in that the donation of public funds is permissible for programs of social welfare for the aid and support of the needy. Art. VII, Sec 14(B) has been construed to include the use of public property as well as funds for social welfare purposes. Op. Atty. Gen. Nos. 98-432, 98-238, 97-236, 87-587, 84-161. Therefore, in our opinion, the City-Parish could, in accordance with Art. VII, Sec. 14(B), fund sewer line repairs located on private property if the public funds are utilized for those who can be classified as needy and if those who receive assistance are screened through objective criteria to ensure that they are truly needy. In Accord: Op. Atty. Gen. No. 98-432.
It is also our opinion that the City-Parish is not prohibited from undertaking the repair of sewer lines located on private property as long as the City-Parish charges each landowner a fee that is sufficient to defray the cost of the repairs. Op. Atty. Gen. Nos. 98-432, 97-99, 95-221.
As your letter indicated, Op. Atty. Gen. No. 92-575 provides that a municipality could undertake the cost of paint and repair to private property for purposes of municipal beautification. However, that opinion is in direct conflict with a number of other opinions issued by this office, to-wit: Op. Atty. Gen. Nos. 99-166, 94-518A, 94-518, 92-780, 92-402. Op. Atty. Gen. No. 92-575 is hereby recalled.
We trust the foregoing to be responsive to your request. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv
OPINION NUMBER 92-575
December 1, 1992
The City may make a donation of a portion of the costs to private property owners on Main Street to rehabilitate their Property if it is concluded the costs is proportionate to the public benefit in stimulating the economy by city beautification.
90-A-2 Public Funds, Loan, Pledge or Grants
Art. VII, Sec. 14
Paul T. Thompson, Esq. Baker City Attorney 3022 Ray Weiland Drive P.O. Box 150 Baker, LA 70704-0150
Dear Mr. Thompson:
This office is in receipt of your request for an opinion of the Attorney General with regard to beautification of Main Street in the City of Baker. You indicate the City in conjunction with private organizations has already undertaken projects for beautification of the City to facilitate economic and social development of the City. The City would now like to enter into joint agreements with property owners along Main Street whereby the City would reimburse the owners for up to one-half of the cost of materials and labor in making repairs, improvements or beautification work to their property fronts that open onto the Main Street thoroughfare subject to approval of pre-submitted plans and specifications by the City.
You ask if the City can lawfully enter into joint or cooperative agreements for community and economic development and beautification whereby the City would reimburse private property owners a portion of the actual expenses of improvements for beautification of their properties to enhance the general appearance of Baker's Main Street area.
This office has recognized under the Supreme Court decision of City of Port Allen v. La. Risk Management, Inc., 439 So.2d 399 (La. 1983) that despite authorization of Art. VII, § 14C for cooperative endeavors, the constitutional prohibition of Art. VII, 14A will be violated "whenever the State or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." It has been concluded to lawfully enter into this cooperative endeavor agreement with a private party, three elements must exist:
 (1) The City is mandated by law to perform the work.
 (2) The work is being performed for a public purpose rather than to serve the private interests.
 (3) The cost of performing the work is proportionate to the public benefit realized thereby.
This office has rendered various opinions which recognize the validity of donations by municipalities of funds for rehabilitation and repair of homes of the needy such as reimbursing property owners for the cost of paint. Atty. Gen. Op. Nos. 75-68, 78-1263, 80-115.
However, in Atty. Gen. Op. No. 80-314 it was particularly noted in considering the expenditure of public funds to a private owner in development of his acreage. as a shopping center that the funds in question were not for the needy. Therein the City of Minden was to apply to the Federal Housing and Urban Development Department for a grant for the purpose of aiding in the construction of this center. It was concluded the funds from the grant constituted public funds of the municipality, and in addressing the constitutional issue, stated that "we must carefully balance the benefit to be bestowed upon the private owner with the public purposes to be ultimately bestowed in connection with the donation of the proceeds." It was found the result envisioned by the City was both realistic and in furtherance of a legitimate public purpose, and in absence of the grant the realities of the economy left little doubt that the public purpose envisioned would not materialize. Accordingly, it was concluded the "scales must tip in favor of the resulting public purposes envisioned by the City of Minden in making its application upon the Department of Housing and Urban Development for an urban development action grant."
The contemplated funds herein clearly grant to private property owners public funds for the restoration and repair of the owner's private property. However, there is a legal duty for the City to maintain the appearance and beautification of the City with the intent of stimulating the economical development, and that is the purpose of the contemplated expenditure of the public funds in question.
There is no indication of the anticipated cost for the renovations and the expected economic and social benefits to the public, but if it is concluded when balancing these elements that there is a proportional benefit to the public, we would conclude this would be a valid transaction as a cooperative endeavor.
We hope this sufficiently answers your question, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYQUB Attorney General
By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General BBR/0278f