Dear Ms. Ward,
You have requested the Attorney General's opinion regarding the Louisiana State Board of Examiners of Psychologists ("LSBEP" or "Board") authority to enter into a contract with the Louisiana Psychological Association ("LPA") for the purpose of assuming the financial responsibility for the LPA to conduct the election of nominees to the Board required of the LPA in La. R.S.37:2353(A)(2).
According to your request, the LPA has notified the Board that the cost of conducting the election has become a tremendous financial burden. Thus, if not prohibited by Article VII, Section 14(A) of the Constitution, the Board is prepared to assume that financial responsibility via contract.
Constitutional Analysis
The constitutional norm for the lawful use of public funds and property is found in La. Const. Art. VII, Sec 14(A), which provides:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged or donated to or for any person, association, or corporation, public or private.
The Supreme Court has interpreted Article VII, Section 14 to be violated whenever the State or a political subdivision seeks to give up something of value when it is under no obligation to do so. City of Port Allen v. Louisiana Risk Management, Inc.,439 So.2d 399 (La. 1983). The opinions of this office have consistently construed the "legal obligation" requirement referred to in the City of Port Allen decision to be a requirement that the purpose of and power for a particular expenditure of public funds be *Page 2 
"sanctioned", or "authorized by law", or in the "discharge of a legal duty." La. Atty. Gen. Op. Nos. 03-0334, 02-0003, 92-204. See also Guste v. Nicholls College Foundation, 564 So.2d 682
(La. 1990). The opinions of this office also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds. La. Atty. Gen. Op. Nos. 03-0334, 92-543, 92-494, 92-402.
This inquiry must also be examined in light of paragraph (C) of Art. VII, Sec. 14, which provides, in pertinent part, that "[f]or a public purpose, the state and its political subdivisions . . . may engage in cooperative endeavors with each other . . . or with any public or private association, corporation, or individual." La. Const. Art. VII, Sec. 14(C). It should be noted, however, that although paragraph (C) authorizes the State to engage in cooperative endeavors for a public purpose, it does not create an exception or exemption from the general constitutional norm. Rather, it merely supplements the prohibition against donations found in Section 14(A). The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Section 14(C) must also meet the general standard for non-gratuitous alienation of public funds or property established by Section 14(A). City ofPort Allen, 439 So.2d at 402.
Thus, when read together, paragraphs (A) and (C)[1]
create a requirement that any expenditure of public funds, even those made pursuant to a cooperative agreement, must be for a public purpose and create a public benefit. Furthermore, previous opinions of this office have stated that a public purpose and benefit are presumed where the underlying legal obligation for the expenditure is created by the Constitution, a statute, or an ordinance. La. Atty. Gen. Op. Nos. 01-40, 01-33, 99-387, 99-105, 92-722. This office has also held that the transfer of funds creating a public benefit must be proportionate to its cost (i.e., the amount transferred. La. Atty. Gen. Op. Nos. 98-410, 90-519, 90-161. Accordingly, in order to pass constitutional muster as a valid cooperative agreement, a contract entered into between the Board and the LPA whereby the Board agrees to assume financial responsibility for the election costs must: (1) be pursuant to an underlying legal obligation; (2) be for a public purpose; and (3) create a public benefit proportionate to the cost.
The aforementioned elements, with regard to cooperative endeavors, were applied in the Louisiana Supreme Court's decision in Guste v. Nicholls College Foundation. In Guste, a transfer of public funds by the Nicholls State University Alumni Federation to the Nicholls College Foundation was held to be "given and accepted `under the authority of the constitution and laws of this state' in furtherance of a governmental purpose".564 So.2d at 688. The Court concluded that the funds were "transferred in the discharge of the Federation's constitutional or legal duties", and were accepted by the Foundation "with a commitment to assist the Federation in carrying out its constitutional and legal duties". Id.
 The Elements: Legal Obligation, Public Purpose, and PublicBenefit *Page 3 
In accordance with the required elements mentioned in the above analysis, the initial issue to be determined regarding the transfer of financial responsibility of the election of nominees to the LSBEP pursuant to a contract, or cooperative endeavor, is whether an underlying legal obligation exists authorizing such an expenditure. According to La. R.S. 37:2353(A)(2):
 All appointments [to the LSBEP] shall be made from a list provided by the Louisiana Psychological Association. The list shall report the results of an election in which persons qualified for board membership may nominate themselves and in which licensed members of the Louisiana Psychological Association and other persons licensed under this Chapter are entitled to one vote for each vacancy on the board. [Emphasis added]
It is apparent from a reading of this statute that in order for the governor to carry out her duty to appoint new board members to the LSBEP, an election must first occur, and the result of this election must be provided by the LPA. Consequently, it can be presumed that since the election itself is statutorily authorized, the expenditure necessary to conduct such an election must also be authorized by law, thereby meeting the first criteria of a valid cooperative endeavor. It is also evident from your correspondence that La. R.S. 37:2353 has, in the past, been interpreted as requiring the LPA to conduct this election. However, it should be noted that although the LPA has paid for the cost of this election in the past, nothing in the statute requires the LPA alone to bear this cost. The statute merely mandates that the LPA provide a list of members eligible for appointment as a result of an election, with no mention of who should assume the financial responsibility for the election itself. Thus, it seems that if the LPA does not hold this election, the burden of conducting this statutorily mandated election would fall to the Board anyway. Therefore, this office is of the opinion that because La. R.S. 37:2353 requires that an election be conducted, the element requiring an underlying legal obligation authorizing the expenditure of public funds is met in the present matter.
The next step in our constitutional analysis in determining whether an expenditure of public funds, made pursuant to a contract, may constitute a prohibited donation of public funds, and thus an invalid cooperative endeavor, is to ascertain whether the expenditure will benefit a public purpose. In order to make this determination, it is important to evaluate the purposes and goals of the two organizations involved. In this case, the LSBEP was created by Act 347 of the 1964 Legislature, amended and reenacted by Act 1987, No. 915, "in order to safeguard life, health, property and public welfare of this state, and in order to protect the people of this state against unauthorized, unqualified, and improper application of psychology." La. R.S.37:2351. Some of the statutory duties and powers of the Board include, but are not limited to: providing with respect to licensure, including provisions for requirements therefore, renewal of licenses, judicial review, collection of fees, and providing with respect to the denial, revocation, or suspension of license. La. R.S. 37:2351-2366. Furthermore, according to the preface and foreword of the regulations governing the professional and occupational standards of psychologists, the "licensure of persons in Louisiana representing themselves to the *Page 4 
public as psychologists and regulation of the practice of psychology is the responsibility of the State Board of Examiners of Psychologists. LAC 46.LXIII Preface and Foreword.
In comparison, the mission of the LPA is "the advancement of psychology as a science, as a profession, and as a means of promoting health, education, and human welfare".[2] The LPA also aims to protect the public and maintain high standards of competence by promoting strong licensing laws for the profession.[3] The LPA has over 200 members and actively serves these members and the public through education, advocacy, and professional development.[4] Thus, it would seem that although the Board is solely responsible for the regulation of psychologists, both the Board and the LPA serve as organizations designed to protect the public and promote high standards of professionalism in the practice of psychology. Accordingly, the appointment of board members, whose responsibility will include the protection of the public through the regulation of psychologists, serves both a public purpose and creates a public benefit that is proportionate to the cost of conducting the election, and therefore does not violate the final two prongs of the constitutional analysis.
In previous opinions of this office, we have applied the elements necessary for a valid cooperative endeavor agreement. Most applicable to the present scenario is La. Atty. Gen. Op. No. 90-39, which addressed the issue of whether the Louisiana State Board of Examiners of Certified Shorthand Reporters could underwrite, for $5,000, a fair to be held by the Louisiana Shorthand Reporters Association to further the education of participating court reporters. La. Atty. Gen. Op. No. 90-39. This office opined that such an arrangement would qualify as a cooperative endeavor that served a public purpose and thus was not prohibited by the constitution. Id. We reasoned that under La. R.S. 37:2553(A), the Board was statutorily required to aid in all matters pertaining to the advancement of the science of shorthand reporting, thereby meeting the first element of a valid agreement — the existence of an underlying legal obligation.Id. We also found that a public purpose would be served by the furthering the education of court reporters consistent with the purpose for which the Board was created. Id.
In Attorney General Opinion No. 99-387, this office found that the provision of funds and resources of the Inspector General's office for the development and operation of a national Inspector General Web site was a constitutionally sanctioned cooperative endeavor. La. Atty. Gen. Op. No. 99-387. In that case, the object of the Web site was to provide for the exchange of information and ideas relevant to the duties and operations of the offices of the various Inspectors General through the Internet. Thus, we opined that such an expenditure would ultimately be to the benefit of all participating Inspectors General.
 Conclusion *Page 5 
In accordance with previous Attorney General Opinions, and the decisions of the Louisiana Supreme Court, this office is of the opinion that the assumption by the LSBEP of financial responsibility for the LPA to conduct the election of nominees to the Board, pursuant to a contract, would not constitute a prohibited donation of public funds, in violation of La. Const. Art. VII, Sec. 14. Rather, such expenditure qualifies, under paragraph (C), as a valid cooperative endeavor. The election is being performed under the authority of La. R.S. 37:2353, it serves a legitimate public purpose, and the assumption by the Board of the financial responsibility of conducting the election creates a commensurate public benefit by ensuring that the Board can discharge its statutory duties and that both the Board and the LPA can continue to serve as the entities responsible for to protecting the public and promoting high standards of professionalism in the practice of psychology.
We further opine that such a transaction should be effected pursuant to a formal cooperative endeavor agreement that clearly reflects: (1) the reciprocal rights and duties of each party; (2) the nature and description of the public purpose of the election, via citation to the applicable statutory provisions authorizing the election; (3) and a brief description of the public benefit to be derived therefrom.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Yours truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:__________________________
 Megan K. Terrell
 Assistant Attorney General
 CCF, Jr./MKT/tp
[1] Paragraph (B) contains exceptions to the general prohibition; however, these exceptions are inapplicable to the matter at hand.
[2] http://www.louisianapsychologist.org. Site last visited on 4/25/2006.
[3] Id.
[4] Id.