Dear Mr. Cannon:
You have requested the opinion of this office as to whether a contract executed by the Madison Parish Hospital and an unnamed physician is legal. Specifically, you ask whether the contract, by which the Hospital agrees to provide the physician with necessary equipment and medical supplies to maintain a general medical practice, and guarantees the physician a gross income from the general medical practice, violates the prohibition against the donation of public funds contained in Article VII, Section 14 of the Louisiana Constitution of 1974. It is the opinion of this office that the contract at issue does not violate this constitutional prohibition and therefore is valid.
The Louisiana Constitution of 1974, Article VII, Section 14, Paragraph (A), provides in pertinent part as follows:
 Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the State or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
Your opinion request asks this office to assume that the contract at issue legally names the Madison Hospital Association, Inc., as a party to the contract and to assume further that this contract is legally executed on behalf of the Madison Hospital Association.
The Madison Hospital Association, Inc. leases the hospital building, grounds, furnishings, equipment, fixtures, appliances, and supplies from the Madison Parish Hospital Service District. Further, the Madison Hospital Service District receives and disburses to the Madison Hospital Association the proceeds of an ad valorem tax of 4.18 mills and a parishwide sales tax of one-half of one percent (.005) for the operation and maintenance of the Madison Parish Hospital.
A hospital service district is a political subdivision of the State. Bertrand v. Sandoz, 255 So.2d 754, 260 La. 239 (1971). Given the above facts, clearly the equipment, supplies, and office space to be furnished to the physician under contract with the Madison Hospital Association, which are in turn furnished by the Madison Hospital District to the Association, are within "the funds, credit, property, or things of value of the state or of any political subdivision."
The first issue to be addressed, and the one on which we base our determination that the subject contract does not violate the prohibition of Art. VII, § 14, is whether the contract would constitute the loan, pledge, or donation of public funds. As a general proposition, under Art. VII, § 14, as well as its direct predecessor, Art. 4, § 12 of the Louisiana Constitution of 1921, this prohibition is violated "whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." City of Port Allen, Louisiana v. Louisiana Municipal Risk Management Agency, Inc., 439 So.2d 399 (La. 1983).
However, this office has also recognized that by the terms of Art. VII, § 14, payments for services rendered do not violate this prohibition when the payments are commensurate with those services. Attorney General Opinion No. 80-613. Art. VII, § 14, only states that public funds and property shall not be "loaned, pledged, or donated," but does not prohibit paying a reasonable amount for services rendered.
The contract provides that the Madison Hospital Association will furnish the physician with office facilities, including utilities and janitorial, for rent of $400.00 per month. The Hospital shall also provide all major equipment and medical supplies necessary to start up and maintain a general medical practice. The Hospital guarantees the physician gross income from this practice of $169,800.00 ($14,150.00 per month), from which is to be deducted any income received by the doctor as an emergency room physician.
In consideration of this agreement, the physician agrees to maintain a general medical practice in Madison Parish for at least two years from the date the practice begins. If the doctor fails to do so, all guaranteed amounts must be repaid to the hospital.
The law governing the creation and powers of a hospital service district is found in La. R.S. 46:1051 et seq. R.S. 46:1077
provides in pertinent part as follows:
§ 1077. Contracts or joint ventures for hospital health services
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service.
La. R.S. 46:1072 defines "hospital health services" as follows:
§ 1072. Definitions
* * * *
 (1) "Hospital health services" means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.
Construed broadly, this definition includes the establishment of a general medical practice in Madison Parish. La. R.S. 46:1071
mandates such a broad application:
 The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. . . The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.
Clearly the contract between the Madison Hospital and the physician is in furtherance of this broad legislative purpose. In return for a guaranteed income and office space (for which rent is paid), supplies, and equipment, the physician agrees to maintain a practice in Madison Parish for at least two years, making use of the Service District facilities.
Given the clear legislative intent and the great expense of medical services, we cannot conclude that guaranteed monthly income of $14,150.00, less office rent and income received as an emergency room physician, constitutes extra or excessive compensation such that public funds and property are being "loaned, pledged, or donated" to the contracted physician.
Therefore the contract at issue is not violative of Article VII, § 14(A) of the Louisiana Constitution of 1974.
Another issue which should be addressed is the potential argument that the contract between the Madison Hospital and the unnamed physician would be valid as a "cooperative endeavor." Such is not the case.
Louisiana Constitution Article VII, § 14(C) provides as follows:
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political cooperations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
La. R.S. 46:1077 provides in pertinent part:
 A hospital service district commission contracting with or engaging in a joint venture with any person. . .to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14 (C) of the Constitution of Louisiana.
These provisions taken together would seem to provide a legislative exception to the prohibition against the donation of public funds contained in Article VII, § 14(A). However, such a construction hinges on an interpretation of Article VII, § 14(C) that "cooperative endeavors" are themselves exceptions to the Paragraph (A) prohibition. The highest court of this state has concluded that Paragraph (C) does not create such an exception.
In City of Port Allen v. Louisiana Municipal Risk Management Agency, cited previously, the Louisiana Supreme Court considered, among other things, the constitutionality, under Article VII, § 14(A), of La. R.S. 33:1341 et seq. This series of statutes authorized municipalities and other government bodies to form an association for the purpose of reducing the danger of loss on account of public liability and worker's compensation. Local government subdivisions could form an intergovernmental risk management agency and pool funds from member contributions in order to manage risks, established group self insurance funds, and to purchase joint insurance.
La. R.S. 33:1347 specifically stated that "[n]o interlocal risk management agency agreement shall have the effect of providing for a donation . . . of the public funds of one local governmental subdivision for the benefit of another" in contravention of Article VII, Section 14(A).
Among the State's contentions was that the obligation imposed upon member political subdivisions under R.S. 33:1341 et seq. was not prohibited by Article VII, Section 14(A) because the statutory scheme was expressly allowed as a "cooperative endeavor" under Section 14(C).
The court rejected this argument in unequivocal terms:
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a "public purpose."
439 So.2d at 402.
The Supreme Court's holding rests, as does the opinion of this office, not on whether there was a "cooperative endeavor" or a "public purpose", but rather on whether public funds and property were being given away or donated, as opposed to being used to pay an amount commensurate with services rendered to the State or political subdivision.
Further, the argument that the contract at issue here provides for the paying of legal obligations of a political subdivision should be rejected. In Guste v. Nicholls State College Foundation, 564 So.2d 682 (La. 1990), the Supreme Court held that the transmission of funds (student fees) from the Nicholls Alumni Federation to the Foundation was not an impermissible donation of public funds. The court reasoned that this transmission of public funds was in furtherance of the Federation's discharging its constitutional or legal duties of furthering public education, and therefore was not violative of Article VII, § 14(A).
This reasoning is not applicable to the contract at issue. Medical services and health care, unlike public education (see Louisiana Constitution Article VIII et seq.), is not a constitutionally mandated function of the political subdivisions and thus not a legal obligation.
We hope this answers your request. If this office can be of further assistance, please contact us.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: GLENN R. DUCOTE Assistant Attorney General
GRD:cdw-0322z