(86 South. 269)

No. 23843.

## IRWIN et al. v. POLICE JURY OF GRANT PARISH.

(June 30, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Animals** ⬤⟹29 — **Tick Eradication Act not unconstitutional as a benefaction.**

Act No. 25 of 1917 (Ex. Sess.) providing for the eradication of Texas fever-carrying tick by requiring the periodical dipping of cattle, *held* not violative of Const. art. 53, in that the expenditures which the police jury is required to incur are for the benefit of the cattle owners, and are therefore a benefaction; such expenditures being for a public purpose.

2. **Animals** ⬤⟹29—**Tick Eradication Act not unconstitutional as controlling police juries.**

Act No. 25 of 1917 (Ex. Sess.), providing for the dipping of cattle to eradicate Texas fever-carrying tick, *held* not unconstitutional as an unauthorized attempt by the Legislature to control the police juries in the matter of expenditure of the money of the parishes, which are mere instrumentalities of the Legislature.

Appeal from Thirteenth Judicial District Court, Parish of Grant; W. F. Blackman, Judge.

Action by Henry L. Irwin and others against the Police Jury of Grant Parish. From judgment for defendant, plaintiffs appeal. Affirmed.

J. B. Roberts and C. H. McCain, both of Colfax, for appellants.

T. A. Carter, of Alexandria, for appellee.

PROVOSTY, J. Act No. 25, p. 34, Acts 1917 (Ex. Sess.), is entitled "An act to provide for the eradication of the Texas fever-carrying tick, commonly known as the cattle tick," etc. It provides that cattle must be dipped periodically in an arsenical solution, and requires the police juries of the several parishes of the state to provide dipping vats and chemicals at the expense of the parish "under the direction of the executive officer of the Louisiana state live stock sanitary board."

Plaintiffs assail the constitutionality of this act.

[1] One ground is that the act violates article 53 of the Constitution, in that the expenditures which the police jury is required to incur for providing dipping vats and chemicals are for the benefit of the cattle owners, and are therefore a charity or benevolence.

Said article is found in the Constitution under the heading, "Limitation of Legislative Powers," and it reads, "No money shall ever be taken from the public treasury," etc. Evidently, therefore, it has application only to appropriations by the Legislature out of the state treasury, not to parish expenditures.

But if it be given a wider scope than this, and held to preclude the taking of money from the treasuries of the parishes for private purposes, it would not stand in the way of the operation of said act. The question presented would then be as to whether the freeing of the state from the Texas fever carrying tick is a purpose sufficiently public in its nature to justify the appropriation of public money for it.

"The question whether the interests of the public are sufficiently involved to justify the exercise of the taxing power is in the first instance for the Legislature to decide; but, since the requirement of a public purpose in taxation is a limitation upon the power of the Legislature, the courts must ultimately decide whether the Legislature has overstepped its constitutional powers, and whether the purpose is public or private. The wisdom or policy of a tax is entirely in the determination of the Legislature, and the least possibility that it will promote the public welfare renders the question one of policy beyond the sphere of the courts. All doubts are to be resolved in favor of the Legislature, and an absence of all possible public interest is clear and palpable." 27 A. & E. E. of L. 627.

There can be no question but that this matter of tick eradication has been one of wide interest in this state, supposed to involve in a large measure the prosperity and welfare of the state. Such being the case, the right of the Legislature to deal with it as has been done by the said statute can hardly be seriously disputed under the hereinabove statement of the law. It is because of the public interest in the domestic animals of the state that quarantine and other laws may be enacted for their protection against contagious and infectious diseases. 3 C. J. 50, § 145.

[2] Another alleged ground of unconstitutionality is that the Legislature is without power to control the police juries in the matter of the expenditure of the money of the parishes so as to compel them to make appropriations for dipping vats and chemicals in the manner provided for in said statute.

But the parishes are mere instrumentalities of the Legislature for local administration; and therefore the control of the Legislature over them and over the funds which they derive from taxation may be said to be supreme, in the absence of constitutional limitation. Dill. Mun. Corp. (3d Ed.) par. 54, p. 75; par. 62, p. 84. And we are not advised of there being any such constitutional limitation in our state.

Apart from the validity of the said statute, plaintiffs urge that the manner in which it has heretofore been carried out has been such as to make it operate as a mere waste of public funds, much needed for roads and other public necessities.

The remedy here would be in seeing to it in some way that the statute was more efficiently carried out, not in stopping altogether its operation. On the assumption that the statute is valid, the officers cannot be enjoined, so long as they are acting in line with it. 22 Cyc. 880; Brennan v. Sewerage & Water Board, 108 La. 582, 583, 32 South. 563.

Judgment affirmed.