Dear Representative Kennard: Theme Park.
This office is in receipt of your request for an Attorney General's opinion regarding two particular capital outlay appropriations, which appropriations were made for the McKinley High School Alumni Community Center project (the "McKinley Project") and the Jazzland Theme Park (the "Jazzland project"). The appropriations for these projects, as contained in Act 29 of the 1998 Regular Session ("Act 29"), are as follows:
"MCKINLEY HIGH SCHOOL ALUMNI
 Old McKinley High Alumni Community Center, Planning and Renovation (East Baton Rouge)" (p. 102 of Act 29)
 "NEW ORLEANS
 Jazzland Theme Park Infrastructure, Planning and Construction (Orleans)" (p. 88 of Act 29)
Previous capital outlay acts have also contained appropriations for the McKinley and Jazzland projects.
Your letter indicates that certain of your constituents believe these projects to be private endeavors, and as such, your constituency is concerned that the expenditure of public funds on these projects may not be constitutional. Implicitly, this inquiry must be examined in light of La. Const. Art. VII, Sec. 14, which prohibits, subject to certain exceptions, the "funds, credit, property or things of value of the state or of any political subdivision" from being "loaned, pledged, or donated to or for any person, association" or corporation, public or private."
The Supreme Court has interpreted Art. VII, Sec. 14 to be violated when the State or a political subdivision seeks to give up something of value when it is under no obligation to do so.City of Port Allen v. Louisiana Municipal Management Agency,439 So.2d 339 (La. 1983). This office has construed the "legal obligation" requirement referred to in the City of Port Allen
decision to be a requirement that the purpose and power for a particular expenditure of public funds be "sanctioned" or "authorized by law" or in the "discharge of a legal duty". Attorney General's Opinion No. 92-204. Our opinions also refer to the requirement of "an underlying legal obligation or authority" for the transfer of public funds. Attorney General's Opinions Nos. 92-543, 92-494, 92-402, 92-204. We are also guided by the Court's decision in Guste v. Nicholls College Foundation,564 So.2d 682 (La. 1990), wherein a transfer of public funds by the Nicholls State University Alumni Federation to the Nicholls College Foundation was held to be "given and accepted `under authority of the constitution and laws of this state' in furtherance of a governmental purpose", as opposed to a donation. The Court concluded that the funds were "transferred in the discharge of the Federation's constitutional or legal duties", and were accepted by the Foundation with a commitment to assist the Federation in carrying out its constitutional and legal duties".
As I am sure you are aware, Act 29, the current capital outlay act, provides in Section 9 thereof, that all funds appropriated therein ". . . under the name of non-state entities, shall be considered as having been appropriated directly to the Facility Planning and Control section of the Division of Administration, and shall be administered . . . under cooperative endeavor agreements." Previous capital outlay acts have also contained similar language.
With regard to the McKinley project, a cooperative endeavor agreement has been executed by and between the Facility Planning and Control section of the Division of Administration ("FPC"), the City-Parish of Baton Rouge and the owner of the property, The McKinley High School Alumni Association, a non-profit corporation. With regard to the Jazzland project, a cooperative endeavor agreement has been executed by and between FPC and the City of New Orleans. Both of these agreements contain acknowledgments by the non-state signatories thereto that the funds provided by the State shall be used ". . . in accordance with all provisions of law affecting the Project as well as the constitutional and statutory restrictions on the use of State funds for publicpurposes." (Emphasis added).
This office is advised that the property which is the subject of the McKinley project is of historical and cultural significance to both the State and the City-Parish of Baton Rouge, and is listed on the National Register of Historic Places. We are further advised that the City-Parish plans to use the property as a cultural and community center as well as for programs such as its HeadStart program. It should be noted that the City-Parish has already executed a lease of the property, and was utilizing a portion of the property for HeadStart program before the recent fire at the site.
With regard to the Jazzland project, this office is advised that the Jazzland Theme Park is anticipated to significantly increase tourism and economic development for both the State and the City of New Orleans. As noted in a prior opinion of this office, the project is expected to draw more than 1.3 million visitors and create over 4,000 jobs in its first year of operation. Attorney General's Opinion No. 98-252. Opinion No. 92-252 also noted that once in operation, the Jazzland Theme Park is projected to generate state and local tax revenues totaling $14.5 Million Dollars annually.
Please be advised that it is the opinion of this office that the capital outlaw appropriations made by the Legislature for the McKinley project and the Jazzland project are constitutional. Based upon our understanding of the cultural and historical significance of the McKinley project, and the economic significance of the Jazzland project, it is the opinion of this office that both projects have valid and legal public, as opposed to purely private, purposes.
Your letter also poses a question pertaining to La. Const. Art.VII, Sec. 10 (I), which provides: "No appropriation shall be made except for a public purpose." Specifically, you inquire whether this section of the constitution should ". . . apply to all appropriations that are approved by the Louisiana State Legislature".
La. Const. Art. VII, Sec. 10 (I) applies to each and every appropriation made by the Louisiana Legislature. As previously stated, it is our opinion that both the McKinley and Jazzland projects are for public purposes. Since both projects are for public purposes, neither project violates Art. VII, Sec. 10 (I).
You also ask whether the public funds of the state and its political subdivisions can be donated, loaned or promised to private companies or individuals.
As previously stated herein, La. Const. Art. VII, Sec. 14
prohibits the State and its political subdivisions from loaning, pledging or donating property or funds to any person, association or corporation, public or private. However, the State does have the authority to implement projects of both a cultural and historical nature, as well as projects designed to increase tourism and spur economic development. We see no reason why the State cannot implement such projects in cooperation with non-state entities, even though those non-state entities will also benefit thereby.
In Attorney General's Opinion No. 93-192, this office examined a particular project of the Amite River Basin Drainage and Water Conservation District. Therein, we stated that "[t]he fact that [an] expenditure of public funds for projects in the public interest may result in the enhancement of private property does not denigrate the public nature of such projects and the public purposes served thereby." See also: Irwin, et al v. Police Juryof Grant Parish, 86 So. 269 (La. 1920).
In our opinion, the McKinley and Jazzland projects are not in violation of La. Const. Art. VII, Sec. 14.
Your letter also notes that the Capital Outlaw appropriation for the McKinley project refers to "renovation". In light of the fire on July 3, 1998, which caused considerable damage to the Old McKinley High School building, you question whether the funds appropriated by the State can be utilized for the purpose intended or whether the funds will be utilized for "rebuilding", presumably a purpose which you considered as beyond the scope of the appropriation contained within Act 29 and previous capital outlay acts. As such, you question the legality of the expenditure.
As you are no doubt aware, the facade of the old McKinley High School was not consumed by the fire that tragically destroyed so much of the building. Obviously, because of the fire, the renovation of the building cannot be conducted in the manner originally contemplated. However, we have been advised that the facade will be maintained as an integral part of the cultural center, in spite of the fire, in order that the site can retain its cultural and historical significance.
Although we recognize that most of the building will have to be rebuilt, as long as the facade is retained it is the opinion of this office that the contemplated reconstruction at the site of the old McKinley High School falls within the definition of "renovation". Webster's Third New International Dictionary, Copyright, 1976, pertinently provides that the definition of "renovate" is "1: to restore to life, vigor, or activity: Revive, Regenerate 2: to restore to a former state (as of freshness, soundness, purity, or newness of appearance: make over :renew").
Based upon the foregoing, it is the opinion of this office that the expenditure of capital outlay funds on the McKinley project is valid and in accordance with law and the constitution.
We trust this correspondence will be of some assistance. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv